**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| ) | |
| **UNITED STATES OF AMERICA** ) | **Crim. No. 05-376-01(JDB)** |
| ) | |
| **v.** ) | |
| ) | |
| **YVES LOUIS** ) | |
| _____) | |

## DEFENDANT'S MEMORANDUM  IN AID OF SENTENCING

Yves Louis, through undersigned counsel, hereby respectfully submits this memorandum

in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32.  Based on all the

sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Louis

respectfully asks the Court to sentence him to a period of incarceration of 121 months. Such a

sentence would be fair and reasonable in light of the circumstances surrounding the offense, the

severe nature of the term of incarceration he will serve, and the fact that he readily accepted

responsibility and assisted the government of the United States.

## BACKGROUND

Mr. Louis was arrested by the Haitian National Police on October 4, 2005. Following a

period of detention and a series of interrogations by the Haitian authorities and the FBI, Mr.

Louis was extradited to the United States pursuant to an arrest warrant.

The indictment, filed on October 7, 2005, charges Mr. Louis with Hostage Taking and

Aiding and Abetting and Causing an Act to be Done, in violation of 18 U.S.C. §§ 1203 (a) and

1

(2).

On December 16, 2006, Mr. Louis pled guilty to the Indictment in accordance with a written plea agreement. Based on Mr. Louis' willingness to cooperate with the government, the plea in this case contemplated a downward departure under U.S.S.G. § 5K1.1.

**DISCUSSION**

## I.     THE POST-<u>BOOKER</u> SENTENCING FRAMEWORK.

_____Under Justice Breyer's majority opinion in <u>Booker</u>, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.  <u>See</u> 18 U.S.C. § 3553(a)(4)."  <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738 (2005).  While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in <u>Booker</u> held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  Pursuant to <u>Booker,</u> therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

_____Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in <u>Booker</u>–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> © to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

_____Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the <u>Booker</u> majority:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of <u>Booker</u>, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following <u>Booker</u> courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

## II.    UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. LOUIS SHOULD RECEIVE A SENTENCE OF 121 MONTHS

### A.    Statutory Provisions

Pursuant to the applicable statute, the maximum term of imprisonment is life for the offense charged in Count One of the Indictment.

### B.    Advisory Sentencing Guidelines

*(I).    Applicable Guideline Range*

The Probation Office, consulting the 2006 edition of the Guidelines Manual, has concluded that, with respect to the offense charged in Count One, the Total Offense Level is 40 and Mr. Louis' criminal history category is I, resulting in an advisory Guideline range of 292-365 months. Under the plea agreement in this case, however, the parties stipulated to a total offense level of 38 which, given Mr. Louis' criminal history, would result in an advisory guideline range of 235-293 months.  In light of Mr. Louis' cooperation, the government has asked for a downward departure resulting in a Guideline range of 168-210 months and a sentence between 180 and 198 months.

### C.    Other Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

4

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

In the case at hand, the Court should consider the underlying facts, as well as each of the relevant sentencing factors under Section 3553(a), in the context of the economic and political situation prevailing in Haiti. While no set of political or economic conditions could justify the commission of the crime in question, the background is relevant to the Court in judging Mr. Louis' actions. While completely inexcusable, Mr. Louis' conduct reflected a widespread perception of hopelessness and helplessness in light of decreasing economic possibilities.

Haiti is the poorest country in the Western Hemisphere, as well as one of the poorest in the world. The United Nations' Human Development Index, which measures "well being" in a country by comparing life expectancy, literacy, education and standard of living, ranks Haiti 155th of 177 countries. See 2006 Human Development Report at http://hdr.undp.org/hdr2006/statistics/. Two thirds of Haiti's eight million citizens live in poverty, while only one quarter of the country's children attend school. See Haiti's Economic Challenge, Robert Perito and Emily Hsu, United States Institute of Peace Briefing at http://www.usip.org/pubs/usipeace_briefings/2006/0717_haiti_economy.html.

Since the 1970s, Haiti's economy has experienced a steady decline and, since the abrupt departure of President Aristide in 2005, the political, security and socio-economic situation

remains in crisis (International Crisis Group). Violence is extremely high and the weak national government is further hindered by human rights abuses at the hands of the Haitian National Police (HNP). The majority of Haitian citizens live in poverty without jobs, adequate food, or health care. In the last two years, frustration among Haitians has been growing. (International Crisis Group).

### I. Nature of the Offense

As outlined in the Statement of Offense and the Presentence Investigation Report (hereinafter, "PSR"), Mr. Louis participated in the commission of a most serious offense. Not only did he take part in the seizure and detention of a child; he used his position of trust and knowledge in order to facilitate the crime's commission.  There is no excuse or justification for the deception and trauma brought about by Mr. Louis' actions.

### II. Characteristics of the Defendant

While his actions cannot be excused, Mr. Louis has done everything in his power since the time of the offense to accept responsibility and demonstrate remorse.  As indicated in the PSR, not only did Mr. Louis acknowledge his role before both Haitian and United States authorities; he pled guilty in a timely fashion and began assisting the government as soon as he was extradited.

As set forth in the PSR, Mr. Louis is a Haitian national and, prior to his arrest and extradition, had resided in Haiti his entire life. Mr. Louis did not finish high school but worked consistently from the time he terminated his studied until the time of his arrest.  Despite his best efforts to make ends meet, the money he earned through his employment was insufficient to

provide for his wife and children.  Mr. Louis has no criminal history whatsoever and, prior to his

incarceration at the hands of the Haitian National Police, had never served any time in detention.

The period of time he has spent at the D.C. Jail and CTF has undoubtedly served as a wake up

call. Not only has he been deprived of his liberty for the first time, but he has been alone, in a

foreign land, unable to communicate with fellow inmates or to receive visits from family or

friends. During the past two years months, Mr. Louis has had little to do but think–think about

his actions, their consequences, and the distance in time and space separating him from his

country. At this point, he wants nothing more than to move on with his life. He knows he must

pay for his crime, but he is eager to return to his family and his home.

       With respect to his home, Mr. Louis knows he will deported following his sentence. He

knows that, whatever the period of time to which the Court sentences him, he will serve an

additional–and not insignificant–period of time behind bars awaiting his deportation. Because he

will spend additional time in immigration proceedings, and because his status as a removable

alien means he will be prohibited from participation in various programs, Mr. Louis asks the

Court to consider the factors and rationale articulated by this Circuit in *United States v. Smith,* 27

F.3d 649 (D.C. Cir. 1994) in making its sentencing decision.  In *Smith,* the D.C. Circuit has

specifically held that a downward departure may be appropriate if a defendant's status as a

deportable alien is likely to cause a fortuitous increase in the severity of his confinement.

Pursuant to 18 U.S.C. § 3624©, prisoners in federal facilities have the right to participate in pre-

release programs aimed at facilitating their re-entry into the community.  In *Lartey v. Dep't of

Justice,* 790 F. Supp. 130 (W.D.LA. 1992), however, the court determined that the right to

participate in such programs was unavailable to deportable aliens and applied only to prisoners

being released into communities within the United States.

Because present law requires that a non-citizen convicted of a federal offense and sentenced to imprisonment must serve the entire sentence (minus statutory good time and time served) and precludes that individual from participating in certain programs while confined, it follows that Mr. Louis faces more severe treatment in this case than he otherwise would by the Bureau of Prisons.

Finally, as indicated above and in the government's motion, Mr. Louis agreed to speak with U.S. government authorities about his role in the offense and related information. Mr. Louis met with the government on several occasions, providing names, descriptions and general addresses for the unindicted co-conspirators in his case.

### III.  Needs of the Community and Public

For the reasons stated in Section II, a sentence of incarceration of 121 months would serve to punish Mr. Louis, while taking into account the specific characteristics of his confinement. Mr. Louis not only will not benefit from certain programs available to other inmates, but will likely serve four to six weeks following his "release" in immigration-related detention. Since he will not be "re-entering" the community, sentencing him to a sentence longer than 121 months would do nothing to serve the public.

Mr. Louis has assisted the United States government to the very best of his abilities. There is no further rehabilitative purpose that a longer sentence of incarceration in this case could serve, no further measure of community benefit that could derive from such a period of confinement. Mr. Louis suffers from no substance abuse problem and has no history of recidivist

tendencies. What he owes the American community is a period of punishment for participating in the kidnaping of an American citizen. In light of the fact that Mr. Louis is a first time offender, will not be entering the U.S. community and will not benefit from Bureau of Prison programs, a sentence of 121 months will more than adequately fulfill 18 U.S. C. § 3553(a)'s punitive, deterrent, and retributive purposes.

## CONCLUSION

_____For the reasons set forth above, as well as for any others that it may deem fair and reasonable, Mr. Louis asks the Court to sentence him to a period of 121 months of incarceration. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in 18 U.S.C. § 3553.

Respectfully submitted,
A.J. Kramer
Federal Public Defender


_____/s/_____
Lara G. Quint
Carlos Vanegas
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500 ex.126

9